### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | CRIMINAL NO. 23-353 |
| QUIDEEM WILLIS | |

### MEMORANDUM OPINION

Rufe, J.                                                                                                                     May 14, 2024

     Defendant Quideem Willis is charged in a three-count indictment with possession with intent to distribute in violation of 21 U.S.C. § 841; possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c); and possession of a firearm by a felon in violation of 21 U.S.C. § 922(g). Defendant has filed a motion to suppress physical evidence. Upon consideration of Defendant's Motion to Suppress, the government's response thereto, and the evidence, testimony, and oral argument presented at a hearing held on April 22, 2024, the Court now enters its findings of fact and conclusions of law.

**I.       FINDINGS OF FACT**

1. At the time of the incident that led to the charges in the Indictment, Frederick Clough[1], Andrew Hudgens and Christopher Toman were employed by the Philadelphia Police Department as a part of the Narcotics Enforcement Team ("NETs") for the 15th District. At the time of the incident, Shaun Parker was employed as a Drug Enforcement Administration ("DEA") Task Force Officer ("TFO").

2. On October 19, 2022, Officers Clough, Hudgens and Toman were conducting surveillance of the 1600 block of Foulkrod Street, which is at the intersection of Foulkrod

---

[1] At the time of the suppression hearing, Frederick Clough was a detective assigned to the District Attorney's Office. Suppression Hr'g Tr. ("Hr'g Tr.") [Doc. No. 21] at 6. The Court will refer to the witness as Officer Clough herein.

and Frankford Avenue.[2] Officer Clough described this as a "high-crime" area[3] known for "open-air drug sales."[4]

3. Officer Clough was stationed as the "eyes" of the operation by observing Real Time Crime Center ("RTCC") cameras at the corner of Foulkrod and Salem Street and the corner of Foulkrod and Frankford.[5] Officers Hudgens and Toman were a part of the "takedown" team and were positioned in a marked police car.[6] Officer Hudgens was riding in the passenger side of the vehicle and Officer Toman was driving.[7]

4. At approximately 7:05 p.m., Officer Clough noticed a man, later identified as Defendant Quideem Willis, on the camera wearing a dark-colored jacket, dark-colored hoodie, dark jeans, and black sneakers on the 1600 block of Foulkrod Street.[8] A Black woman approached Mr. Willis in a camouflage hoodie and they engaged in a conversation.[9] After a few moments, Mr. Willis walked west on Foulkrod and then south on Frankford. He then entered an apartment complex at 4740 Frankford.[10]

5. At approximately 7:10 p.m., Mr. Willis returned to the 1600 block of Foulkrod and interacted with the same woman.[11] Their interaction, as viewed on the RTCC camera, is

---

[2] Hr'g Tr. at 11.
[3] Hr'g Tr. at 12.
[4] Hr'g Tr. at 33.
[5] Hr'g Tr. at 11, 13, 15.
[6] Hr'g Tr. at 9, 61.
[7] *Id.*
[8] Hr'g Tr. at 18.
[9] *Id.*
[10] *Id.*
[11] *Id.*

largely obstructed by a telephone pole.[12] It is unclear from the video if anything was exchanged between the two of them. After the interaction, the woman walked across the street.[13]

6. At approximately 7:53 p.m., a man, later identified as Timothy Sams, approached Mr. Willis on the 1600 block of Foulkrod.[14] Mr. Sams was wearing a knit hat, sweatpants with writing down the side of one leg, and sneakers.[15] Mr. Sams handed something (which the government contends was money) to Mr. Willis. Mr. Willis then reached into his jacket pocket and removed a clear plastic bag. Mr. Willis removed small objects from the plastic bag and gave the objects to Mr. Sams.[16] Based on Officer Clough's training and expertise, Officer Clough believed this interaction to be consistent with a narcotics sale.[17]

7. Mr. Sams walked away from Mr. Willis and headed west on Foulkrod[18] and then north on Frankford.[19] Officer Clough relayed Mr. Sams's movement to two backup officers—Sergeant Cruz and Officer Mullen—through a radio transmission.[20]

8. Mr. Sams next turned onto Fillmore Street, at which point he was no longer visible on the RTCC camera. Within approximately 12 seconds of Mr. Sams exiting the camera frame,

---

[12] Gov. Ex. 2; Hr'g Tr. at 21.
[13] Hr'g Tr. at 18.
[14] Hr'g Tr. at 26.
[15] *Id.*
[16] Hr'g Tr. at 27.
[17] *Id.*
[18] Hr'g Tr. at 33.
[19] Hr'g Tr. at 34.
[20] *Id.*

      the backup officers can be seen turning onto Fillmore Street in a white Ford.[21] Sergeant Cruz and Officer Mullen arrested Mr. Sams on Fillmore Street moments later.

9. As a result of a search incident to arrest, the officers recovered narcotics from Mr. Sams.[22] The backup officers relayed this information to Officer Clough by stating "it was positive" via radio transmission.[23] Officer Clough used this information to further confirm that he had previously witnessed a narcotics interaction between Mr. Willis and Mr. Sams.[24]

10. At approximately 7:55 p.m., Mr. Willis walked across the street and entered the driver's side of a red Chrysler. At approximately 7:56 p.m., Mr. Willis got out of the car and walked back across the street to the south side of Foulkrod.[25]

11. At approximately 7:57 p.m., Mr. Willis crossed the street again and entered the driver's side of the red Chrysler. The car's headlights came on. The car began traveling east on Foulkrod, approaching the intersection of Foulkrod and Darrah Streets.[26] Officer Clough radioed his NET team to inform them that the vehicle was moving.[27]

---

[21] Hr'g Tr. at 53–54.

[22] Hr'g Tr. at 34.

[23] Hr'g Tr. at 28.

[24] Hr'g Tr. at 34.

[25] Hr'g Tr. at 42–44.

[26] Hr'g Tr. at 39.

[27] Hr'g Tr. at 44.

12. Based on Officer Clough's direction, Officers Toman and Hudgens activated the police lights to their vehicle and pulled in front of Mr. Willis's car at the corner of Foulkrod and Darrah.[28] The police car blocked Mr. Willis's path.[29]

13. Officer Hudgens exited the passenger side of his police patrol car.[30] As Officer Hudgens approached the Chrysler, he observed Mr. Willis "lift up."[31] Officer Hudgens drew his weapon and pointed it at the windshield, while yelling "let me see your hands."[32]

14. Officer Hudgens opened the driver's side door to the Chrysler and removed Mr. Willis from the driver's seat.[33] Officer Hudgens placed Mr. Willis under arrest and put him in handcuffs.[34] As a search incident to arrest, Officer Hudgens recovered a clear sandwich bag with multiple colored flip-top containers containing drugs, as well as $262 in cash.[35]

15. Officer Hudgens told Officer Toman to check the car for additional contraband. Officer Toman knelt on the street and looked underneath the driver's seat.[36] As he began to stand up, Officer Toman noticed that the control panel for the air conditioning and heating was popped out "maybe an inch and a half."[37] Officer Toman put his flashlight in the compartment and noticed the butt end of a magazine and a gun.[38]

---

[28] Hr'g Tr. at 86.

[29] *Id.*

[30] Hr'g Tr. at 87.

[31] Hr'g Tr. at 65. Officer Toman similarly described Mr. Willis as making a "lifting motion." Hr'g Tr. at 87.

[32] Hr'g Tr. at 66.

[33] *Id*.

[34] *Id.*

[35] Hr'g Tr. at 67.

[36] Hr'g Tr. at 87.

[37] *Id.*

[38] Hr'g Tr. at 87, 88.

16. Officer Toman yelled "gun."[39] At this point, Mr. Willis began running north on Darrah while still handcuffed.[40] Officers Lee and Tunkara of the Philadelphia Police Department apprehended Mr. Willis within approximately half a block.[41]

17. After Mr. Willis was placed in the back of the police car, Officer Toman pulled the red Chrysler over to the side of the road on Darrah Street to allow traffic to pass.[42] He did not search the car further.[43] The car was later moved to a secure lot at 4298 Macalester Street.[44]

18. Officer Toman relayed the arrest and the discovery of the gun to Officer Clough via radio transmission.[45] Officer Clough contacted Officer Parker to assist in preparing a search warrant for the red Chrysler.[46] Officer Clough and Officer Parker met on the night of October 19, 2022, after which Officer Parker prepared and submitted the search warrant to the Philadelphia District Attorney's Office.[47] The search warrant was approved the following morning.[48]

19. The Search Warrant identifies the items to be searched for as: "Narcotics, United State[s] currency, [] weapons (Guns) and drug related paraphernalia."[49]

---

[39] Hr'g Tr. at 63, 88.

[40] Hr'g Tr. at 63.

[41] Hr'g Tr. at 63, 70.

[42] Hr'g Tr. at 89–90.

[43] Hr'g Tr. at92–92.

[44] Hr'g Tr. at 93, 99.

[45] Hr'g Tr. at 93.

[46] Hr'g Tr. at 47.

[47] Hr'g Tr. at 99.

[48] *Id.*

[49] Gov't Ex. 5-A

20. On October 20, 2022 at approximately 12:00 p.m., Officer Parker and two other officers served the search warrant at 4298 Macalester Street. Pursuant to the search, the officers recovered a firearm with an extended magazine from the heat and air conditioning compartment.[50] The officers also recovered a pill bottle containing 127 alprazolam pills, a bag of marijuana, a phone, and an identification card.[51]

**II.   DISCUSSION**

Mr. Willis moves to suppress all physical evidence arising from what he maintains was an illegal arrest and search.[52] Mr. Willis argues that his arrest was not supported by probable cause and, even if the arrest was supported by probable cause, the search of the red Chrysler was illegal.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[53] If the government recovers inculpatory evidence through such an unlawful search or seizure, the exclusionary rule requires this Court to exclude that evidence at the trial.[54] In order to suppress evidence, the defendant has the burden of establishing that his Fourth Amendment rights were violated.[55] "However, once the defendant has established a basis for his motion . . . the burden shifts to the

---

[50] Hr'g Tr. at 104.

[51] Hr'g Tr. at 107.

[52] Mot. Suppress [Doc. No. 16].

[53] U.S. CONST. amend. IV.

[54] *See United States v. De Reyes,* 149 F.3d 192, 194 (3d Cir. 1998).

[55] *United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992) (citation omitted).

government to show that the search or seizure was reasonable."[56] The burden of proof is preponderance of the evidence.[57]

### A. The Arrest

Mr. Willis argues that the officers lacked probable cause to arrest him. The government responds that the officers had reasonable suspicion for the stop and probable cause to arrest Mr. Willis, since they observed at least one hand-to-hand drug interaction in a high-crime area and subsequently recovered drugs from a man they had just seen engaging in the hand-to-hand interaction with Mr. Willis.

Investigative ("Terry") stops are justified under the Fourth Amendment if they are made based on a police officer's reasonable suspicion that "criminal activity may be afoot."[58] Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."[59] The officer's suspicion "must be based on commonsense judgments and inferences about human behavior."[60] "[T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis."[61]

---

[56] *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted).

[57] *United States v. Mastronardo*, 987 F. Supp. 2d 569, 575 (E.D. Pa. 2013) (citing *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974)).

[58] *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Roberson,* 90 F.3d 75, 77 (3d Cir. 1996) (citing *Terry* and holding that an investigative stop may be justified by less than the probable cause necessary for an arrest).

[59] *Illinois*, 528 U.S. at 123.

[60] *Id.* at 125.

[61] *Id.* at 124.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."[62] "To determine whether an officer had probable cause to arrest an individual, a court must examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."[63] As the Third Circuit has articulated:

> [t]he determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed.[64]

Under the "collective knowledge" doctrine, the knowledge of some members of law enforcement may be imputed to others to support a finding of reasonable suspicion or probable cause.[65] "It is well established . . . that the arresting officer need not possess an encyclopedic knowledge of the facts supporting probable cause, but can instead rely on an instruction to arrest delivered by other officers possessing probable cause."[66] It would be "impractical to expect an officer . . . to communicate to the other officers every fact."[67]

---

[62] *United States v. Fredericks*, 684 F. App'x 149, 157 (3d Cir. 2017) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

[63] *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996)).

[64] *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (quoting *United States v. Glasser*, 750 F.2d 1197, 1206 (3d Cir. 1984)).

[65] *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010).

[66] *United States v. Burton*, 288 F.3d 91, 99 (3d Cir. 2002); *see also Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("[A]n officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis.").

[67] *Whitfield*, 634 F.3d at 746.

Observation of a single hand-to-hand drug transaction has been held sufficient to constitute reasonable suspicion to stop and probable cause to arrest.[68] Here, Officer Clough had additional information. Officer Clough not only observed a hand-to-hand transaction via the RTCC camera, but he also confirmed the transaction once the narcotics were recovered from Mr. Sams.[69] It was only at this point that Officer Clough radioed the back-up officers to arrest Mr. Willis. Under the collective knowledge doctrine, Officer Clough did not need to articulate all of the underlying facts that led to his determination that there was probable cause to arrest Mr. Willis. The Court concludes that Officer Clough, and therefore the back-up officers, had reasonable suspicion to stop and probable cause to arrest Mr. Willis.

A search incident to a lawful arrest is permissible under the Fourth Amendment.[70] After a legal arrest is effectuated, an officer may search "the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'"[71] Officer Hudgens searched Mr. Willis's jacket and pants pockets after the validly executed arrest. This search falls clearly within the search incident to arrest doctrine and is proper under the Fourth Amendment.

### B. The Search of the Car

Mr. Willis argues that Officer Toman's warrantless search of the red Chrysler was unlawful because he entered Mr. Willis's car without probable cause. "Although the Fourth

---

[68] *United States v. Parker*, No. 05-702, 2006 WL 964488, at *3 (E.D. Pa. April 13, 2006).

[69] Officer Clough has significant experience as a NETs Officer and has observed over 100 hand-to-hand transactions. *See* Hr'g Tr. at 8.

[70] *United States v. Robinson*, 414 U.S. 218, 235 (1973) (("[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.").

[71] *Arizona v. Gant,* 556 U.S. 332, 335 (2009) (quoting *Chimel v. California,* 395 U.S. 752, 763 (1960)).

Amendment generally requires police to secure a warrant before conducting a search, the longstanding 'automobile exception' to the warrant requirement allows police to search a vehicle so long as there is 'probable cause to believe the vehicle contains evidence of criminal activity.'"[72] For constitutional purposes, there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant."[73] Probable cause exists "when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[74] The government is permitted to conduct a warrantless search of the entire vehicle, including concealed compartments, so long as the area could conceal the object of the search.[75]

Here, Officer Toman had probable cause to search the vehicle after Mr. Willis's arrest. Officer Clough had previously observed a hand-to-hand drug transaction across the street from Mr. Willis's car. After the transaction, Mr. Willis walked across the street and entered the car for a brief moment and then returned to stand on the street corner. Moments later, Mr. Willis entered the car again and began to drive away. Based on the totality of these facts, there was a fair probability or probable cause to believe that the vehicle contained contraband.[76]

---

[72] *United States v. Cobb*, 483 F. App'x 719, 723 (3d Cir. 2012) (quoting *Gant*, 556 U.S. at 347) (brackets omitted); *Burton*, 288 F.3d at 100 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)); *see also United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014).

[73] *Chambers v. Maroney*, 399 U.S. 42, 52 (1970).

[74] *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[75] *United States v. Ross*, 456 U.S. 798, 804–09, 825 (1982) ("[A] search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.").

[76] *See United States v. Lloyd*, No. 21-81, 2022 WL 2916684, at *5 (E.D. Pa. July 22, 2022) (finding that there was probable cause to search an automobile after the officers witnessed hand-to-hand interactions and saw the defendant search for items in his car).

The police validly obtained the warrant. Where a defendant seeks to suppress evidence obtained pursuant to a warrant, the Third Circuit has held that:

> [T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. Keeping in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place, a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found.[77]

There is ample evidence identified in the Affidavit that established a fair probability that evidence would be found in the car. Therefore, the Court concludes that Officer Parker's search pursuant to a search and seizure warrant was properly effectuated.

### III.   CONCLUSIONS OF LAW

1. Officer Clough had reasonable suspicion to stop and probable cause to arrest Mr. Willis.

2. Under the collective knowledge doctrine, Officer Toman and Officer Hudgens had reasonable suspicion to stop and probable cause to arrest Mr. Willis.

3. Officer Hudgens legally searched Mr. Willis's person pursuant to the search incident to arrest doctrine.

4. Officer Toman had probable cause to search the car after Mr. Willis's arrest.

5. Officer Parker searched the car pursuant to a validly executed search and seizure warrant.

6. The arrest of Mr. Willis and the subsequent searches of the car did not violate the Fourth Amendment.

---

[77] *See United States v. Conley,* 4 F.3d 1200, 1205 (3d Cir.1993) (internal citations and quotations omitted, alterations in original)

## IV.     CONCLUSION

For the reasons stated above, Mr. Willis's Motion to Suppress is denied. An order will be entered.